# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

MIAMI SPORTS AND EXHIBITION AUTHORITY,
an independent agency of the City of
Miami,

    Plaintiff,

v.

H. WAYNE HUIZENGA, DECOMA MIAMI
ASSOCIATES, LTD., by and through
its general partner, DECOMA, LTD.,
DECOMA, LTD., by and through its
general partner DECOMA VENTURE,
DECOMA VENTURE, BIL DEVELOPMENT,
INC., LINBECK MIAMI CORPORATION,
HSA MANAGEMENT, INC., HUIZENGA
HOLDINGS, INC., LMI/HHI, LTD.,
by and through its general
partners HHI/LMI FLORIDA, INC. and
SCM HOLDINGS, INC., HHI/LMI FLORIDA,
INC., SCM HOLDINGS, INC., ARENA
OPERATING COMPANY, LTD., by and
through its general partner ARENA
OPERATING COMPANY, INC., ARENA
OPERATING COMPANY, INC., ARENA
DEVELOPMENT COMPANY, LTD., by and
through its general partner ARENA
DEVELOPMENT COMPANY, INC.,  ARENA
DEVELOPMENT COMPANY, INC., RICHARD
C. ROCHON, JOHN A. BLAISDELL and
CHRISTOPHER KORGE,

    Defendants.
_____/

**96-1996**

CASE NO. CIV - GRAHAM

MAGISTRATE JUDGE GARBER



## COMPLAINT

Plaintiff, Miami Sports and Exhibition Authority ("MSEA"), by

and through undersigned counsel, hereby sues Defendants, H. Wayne

Huizenga, Decoma Miami Associates, Ltd., by and through its general

partner Decoma, Ltd., Decoma, Ltd., by and through its general

partner Decoma Venture, Decoma Venture, BIL Development, Inc., Linbeck Miami Corporation, HSA Management, Inc., Huizenga Holdings, Inc., LMI/HHI, Ltd., by and through its general partners HHI/LMI Florida, Inc. and SCM Holdings, Inc., HHI/LMI Florida, Inc., SCM Holdings, Inc., Arena Operating Company, Ltd., by and through its general partner Arena Operating Company, Inc., Arena Operating Company, Inc., Arena Development Company, Ltd., by and through its general partner Arena Development Company, Inc., Arena Development Company, Inc., Richard C. Rochon, John A. Blaisdell, and Christopher Korge, and alleges as follows:

### NATURE OF THE ACTION

1.   This is an action for damages and injunctive relief to redress Defendants' violations of the Sherman Act, 15 U.S.C. §§ 1 and 2 et seq.  Jurisdiction over this action is based on this Court's exclusive jurisdiction to adjudicate antitrust violations pursuant to 28 U.S.C. §§ 1331 and 1337.   MSEA seeks to enjoin Defendants' predatory and monopolistic conduct which is against the public interest and which is preventing MSEA from fulfilling its statutory mission.  MSEA also seeks damages and attorney's fees.

2.   Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391 (b) and (c) because a substantial part of the events giving rise to the claim occurred within the Southern District of Florida and because the corporate defendants are

-2-

FITZGERALD & PORTUONDO, P. A.
Grand Bay Plaza / Suite M-103, 2665 S. Bayshore Drive, Coconut Grove, Fl 33133 Telephone (305) 854-6666 · Fax (305) 856-7634

subject to personal jurisdiction in the Southern District of Florida.

## PARTIES

3.    Plaintiff, Miami Sports and Exhibition Authority ("MSEA"), is an independent and autonomous agency of the City of Miami, created pursuant to § 212.057, Fla. Stat., and §§ 52.6.1 and 52.6.2., City of Miami Code.

4.    Defendant, H. Wayne Huizenga ("Huizenga"), is a Florida resident.  Huizenga has knowingly and intentionally contracted and conspired to restrain trade in the South Florida sports and entertainment facility market and has monopolized and attempted to monopolize said market.

5.    Defendant, Decoma Miami Associates, Ltd. ("DMAL"), is a Florida limited partnership.  DMAL has knowingly and intentionally contracted and conspired to restrain trade in the South Florida sports and entertainment facility market and has monopolized and attempted to monopolize said market.

6.    Defendant, Decoma, Ltd. ("Decoma, Ltd.") is a Texas limited partnership authorized to conduct business in the State of Florida and the sole general partner of DMAL.  Decoma, Ltd. has knowingly and intentionally contracted and conspired to restrain trade in the South Florida sports and entertainment facility market and has monopolized and attempted to monopolize said market.

-3-

7.     Defendant, Decoma Venture ("Decoma Venture"), is a Texas joint venture authorized to conduct business in the State of Florida and the sole general partner of Decoma, Ltd.   Decoma Venture has knowingly and intentionally contracted and conspired to restrain trade in the South Florida sports and entertainment facility market and has monopolized and attempted to monopolize said market.

8.     Defendant, BIL Development, Inc. ("BIL"), d/b/a Decoma Venture, is a Texas corporation authorized to conduct business in the State of Florida, a limited partner of DMAL, and the managing venturer of Decoma Venture.   BIL has knowingly and intentionally contracted and conspired to restrain trade in the South Florida sports and entertainment facility market and has monopolized and attempted to monopolize said market.

9.     Defendant, Linbeck Miami Corporation ("Linbeck"), is a Texas corporation authorized to conduct business in the State of Florida and a venturer in Decoma Venture.   Linbeck has knowingly and intentionally contracted and conspired to restrain trade in the South Florida sports and entertainment facility market and has monopolized and attempted to monopolize said market.

10.     Defendant, HSA Management, Inc. ("HSA"), d/b/a Leisure Management International ("LMI"), is a Texas corporation authorized to conduct business in the State of Florida and a venturer in Decoma Venture.   HSA has knowingly and intentionally contracted and conspired to restrain trade in the South Florida sports and

-4-

entertainment facility market and has monopolized and attempted to monopolize said market.

11. Defendant, Huizenga Holdings, Inc. ("HHI"), is a Florida corporation.  HHI has knowingly and intentionally contracted and conspired to restrain trade in the South Florida sports and entertainment facility market and has monopolized and attempted to monopolize said market.

12. Defendant, LMI/HHI, Ltd. ("LMI/HHI"), d/b/a Leisure Management International ("LMI"), is a Texas limited partnership authorized to conduct business in the State of Florida.  LMI/HHI has knowingly and intentionally contracted and conspired to restrain trade in the South Florida sports and entertainment facility market and has monopolized and attempted to monopolize said market.

13. Defendant, HHI/LMI Florida, Inc. ("HHI/LMI"), is a Florida corporation and a general partner of LMI/HHI, Ltd.  HHI/LMI has knowingly and intentionally contracted and conspired to restrain trade in the South Florida sports and entertainment facility market and has monopolized and attempted to monopolize said market.

14. Defendant, SCM Holdings, Inc. ("SCM"), is a Texas corporation authorized to conduct business in the State of Florida and as a general partner of LMI/HHI, Ltd. is liable for the acts of LMI/HHI, Ltd.

-5-

15. Defendant, Arena Operating Company, Ltd. ("Arena Operating, Ltd.") is a Florida limited partnership. Arena Operating, Ltd. has knowingly and intentionally contracted and conspired to restrain trade in the South Florida sports and entertainment facility market and has monopolized and attempted to monopolize said market.

16. Defendant, Arena Operating Company, Inc. ("Arena Operating, Inc.") is a Florida corporation and the general partner of Arena Operating, Ltd. Arena Operating, Inc. has knowingly and intentionally contracted and conspired to restrain trade in the South Florida sports and entertainment facility market and has monopolized and attempted to monopolize said market.

17. Defendant, Arena Development Company, Ltd. ("Arena Development, Ltd.") is a Florida limited partnership. Arena Development, Ltd. has knowingly and intentionally contracted and conspired to restrain trade in the South Florida sports and entertainment facility market and has monopolized and attempted to monopolize said market.

18. Defendant, Arena Development Company, Inc. ("Arena Development, Inc.") is a Florida corporation and the general partner of Arena Development, Ltd. Arena Development, Inc. has knowingly and intentionally contracted and conspired to restrain trade in the South Florida sports and entertainment facility market and has monopolized and attempted to monopolize said market.

-6-

19. Defendant, Richard C. Rochon ("Rochon"), is a Florida resident. Rochon is president and director of BIL, president and director of Linbeck, president and director of HSA, president, secretary and director of HHI and president, secretary and director of HHI/LMI. Rochon has knowingly and intentionally contracted and conspired to restrain trade in the South Florida sports and entertainment facility market and has conspired to monopolize said market.

20. Defendant, John A. Blaisdell ("Blaisdell"), is a Florida resident. Blaisdell is vice-president of BIL, president of HSA, president and chief executive officer of LMI and vice-president of SCM. Blaisdell has knowingly and intentionally contracted and conspired to restrain trade in the South Florida sports and entertainment facility market and has conspired to monopolize said market.

21. Defendant Christopher Korge ("Korge"), is a Florida resident. Korge has knowingly and intentionally contracted and conspired to restrain trade in the South Florida sports and entertainment facility market and has conspired to monopolize said market. While purportedly acting as counsel for MSEA, Korge, in conspiracy with the other Defendants, undertook unauthorized actions outside the scope of his authority and contrary to the interests of MSEA.

-7-

## GENERAL ALLEGATIONS

### INTRODUCTION

22. MSEA was created pursuant to § 212.057, Fla. Stat.,[1] and §§ 52.6-1 and 52.6-2, City of Miami Code, to promote sports, conventions and exhibitions in the City of Miami ("City") by constructing a sports coliseum and improving and remodelling existing convention centers, stadiums, halls, arenas and auditoriums. One of MSEA's principal objectives is to attract professional sports franchises to Miami and have those franchises utilize sports and entertainment facilities in the City.

23. MSEA's efforts to fulfill its statutory obligations have been and continue to be impeded by Huizenga, DMAL, Decoma, Ltd., Decoma Venture, BIL, Linbeck, HSA, HHI, LMI/HHI, HHI/LMI, SCM, Arena Operating, Ltd., Arena Operating, Inc., Arena Development, Ltd., Arena Development, Inc., (collectively Huizenga and "the Huizenga entities"), Rochon, Blaisdell and Korge, who have contracted and conspired to restrain trade and competition in and/or who have monopolized and attempted to monopolize the sports and entertainment facility market, the relevant product market, in South Florida, the relevant geographical market.

24. As a result of Huizenga, the Huizenga entities, Rochon, Blaisdell and Korge's actions, MSEA has been unable to compete in

---

[1]   Section 212.057 has been repealed and replaced by § 212.0305, Fla. Stat., which contains provisions similar to those in the original statute.

-8-

the South Florida sports and entertainment facility market. Huizenga, the Huizenga entities, Rochon, Blaisdell and Korge are conspiring to prevent MSEA from building a new arena (the "New Arena") which MSEA seeks to build in order to preserve competition in the relevant South Florida market. Huizenga, the Huizenga entities, Rochon, Blaisdell and Korge are acting contrary to the public interest and preventing MSEA from fulfilling its mission, thereby injuring not only MSEA, but also the general public in South Florida.

## BACKGROUND

25. Prior to 1984, Miami did not have a professional basketball or hockey franchise. The only professional sports team in South Florida was the Miami Dolphins football team which, at the time, belonged to the Robbie family. In fact, MSEA had no sports coliseum to offer a professional basketball or hockey team.

26. In 1984, the City published a request for proposals for development, construction, and management of a sports coliseum in a project to be known as the Miami Sports Exhibition Complex Project and the Southeast Overtown/Park West Redevelopment Project Phase I Development (the "Miami Arena Project"), which included the Miami Arena ("Miami Arena").

27. At the conclusion of the bidding process, the Miami Arena project was awarded to DMAL, a Florida limited partnership composed of Jorge de Cardenas, Al Cardenas, Guillermo Freixas, Jesse

-9-

McCrary, Clyde Pettaway and BIL, as limited partners, and Decoma, Ltd., as general partner. Decoma, Ltd., in turn, is a limited partnership composed of Main, Inc., as limited partner, and Decoma Venture, as general partner. Decoma Venture, in turn, was originally composed of BIL, as managing venturer, Linbeck and HSA. Ultimately, these three entities, BIL, Linbeck and HSA, were to develop, construct and manage the Miami Arena.

28. On October 10, 1986, two agreements were entered into to consummate the Miami Arena project. The Land-Lease Agreement ("Lease") between the City and MSEA leased the land in question to MSEA. The Miami Arena Contract ("MAC"), which was subsequently amended on December 13, 1990 by the First Amendment to Miami Arena Contract and Agreement, sets forth DMAL's and MSEA's rights and obligations with respect to the design, construction, development and operation of the Miami Arena.

29. The Land-Lease Agreement states in relevant part as follows:

A. Section 11.1. The CITY agrees that during the Term hereof it shall not sponsor in any manner a facility that shall compete with the Arena at which substantially similar events can be presented on a commercial basis to audiences of comparable size other than the James L. Knight International Center, the Ralph Monroe Marine Stadium (as they presently exist), any permanent and/or temporary Exhibition/Convention Hall Facility, including the Coconut Grove Exhibition Center and any expansion thereto, and the planned Bayfront Park Amphitheater so long as commercial audiences who purchase tickets for any such event held at the amphitheater are restricted to no more than 4,000 people for each such event.

-10-

B.   Section 11.2.   Decoma, as the OPERATOR, and its general partner, Decoma, Ltd. agree that for so long as Decoma is the OPERATOR under the terms of the Miami Arena Contract, Decoma and Decoma, Ltd, shall not develop, construct and operate, within the Florida counties of Dade, Broward, Monroe, and Palm Beach, an arena facility, which facility (a) is of similar size and quality and provides similar amenities to the Arena and (b) has been designed to accommodate and accommodates audiences of comparable size to those audiences which can be accommodated in the Arena, and (c) holds events, on a commercial basis, that are the same events which would have been held at the Arena, but for the development, construction and operation of such facility by Decoma or Decoma, Ltd.  This Section 11.2 shall not apply to shareholders of, or parties owning any beneficial interest in, the above designated entities.

30.   The MAC states in relevant part as follows:

A.   Section D.8.1.1   Owner shall not enter into any agreement with any other person or entity (i) to develop, construct, manage, or operate the Arena, (ii) to negotiate, execute or perform contracts with persons or entities who desire to exhibit or perform in the Arena, (iii) to negotiate, execute, or perform contracts for the use of advertising space within the Arena or on the Project Land, or (iv) to operate concessions within the Arena or on the Project Land; Operator shall have the exclusive power, authority, and responsibility to perform all of the acts described in Clauses (i) through (iv) of this Subparagraph D.8.1.1.

B.   Section D.8.1.2   Owner shall not facilitate, encourage, participate in, or finance the construction or operation of any other arena, amphitheater, coliseum or stadium (other than exhibition or convention facilities [or what is now known as the Miami Baseball Stadium (if it remains an open air, unairconditioned stadium used principally for baseball) and the Orange Bowl]) at which events could be presented that would be substantially similar to events that could be presented at the Arena and for which there would then be seating comparable to the seating at the Arena, whether or not such construction or upgrade is financed in whole or in part by the Convention

-11-

Development Tax Revenues, without Operator's prior written approval, which operator may withhold in its sole discretion.

C. Section D.8.11 Convention Development Tax Revenues. Subject to the Bonds, the Miami Sports and Exhibition Authority Subordinate Obligation Note Series 1985, and any bonds that may hereafter be issued to finance construction of an exhibition center, Owner hereby pledges to Operator all of its rights, titles and interests in and to all Convention Development Tax Revenues received or to be received in the future and shall cause such to be used exclusively to pay Public Capital Costs and thereafter to be used exclusively for the benefit of the Premises, operating expenses of Owner and necessary expenses relating to an exhibition center.

31. In essence, the Lease and MAC provisions cited above in paragraphs 29 and 30 have been unreasonably used by Huizenga, the Huizenga entities, Rochon, Blaisdell and Korge to:

A. Block any attempt by the City to in any way sponsor, be it by financial backing, lobbying, facilitating discussions, fostering community support, issuing permits or otherwise, a facility which will compete with Huizenga and the Huizenga entities for commercial audiences;

B. Veto any event at the Bayfront Park Amphitheater in which the paying audience for any single event exceeds 4,000 persons;

C. Exclusively negotiate and contract with any entities or individuals, including sports franchises and concert performers, who wish to play or perform at the Miami Arena. This encompasses setting, at their sole discretion, the terms and conditions for licenses granted to such entities or

-12-

FITZGERALD & PORTUONDO, P. A.

Grand Bay Plaza / Suite M-103, 2665 S. Bayshore Drive, Coconut Grove, Fl 33133 Telephone (305) 854-6666 · Fax (305) 856-7634

individuals, including the monetary amount to be charged for occupation of the Miami Arena;

D.    Block MSEA, an entity created to, among other things, promote sports and exhibitions in Miami, construct and remodel sports and entertainment facilities and attract professional sports franchises to Miami, from in any way engaging in dialogue about, encouraging the creation of, supporting the concept of, discussing the possibility of, assisting in the creation of or financially backing the construction or operation of a facility which would compete with Huizenga and the Huizenga entities; and

E.    Unreasonably control, for anti-competitive and monopolistic purposes, the Convention Development Tax funds ("CDT funds") levied pursuant to § 212.0305, Fla. Stat., for purposes of constructing, remodelling and or maintaining arenas and similar facilities.[2]

32.    Over the past ten (10) years, the role of Operator of the Miami Arena, originally granted to DMAL under the MAC, has, contrary to the original intent of the MAC and without MSEA's legal consent, passed from entity to entity and ultimately to Huizenga and the Huizenga entities, as follows:

A.    Although the MAC was entered into between DMAL and MSEA, it was the partnership known as Decoma Venture, a general partner of Decoma, Ltd., which was in turn a partner

---

[2]    As of the date of this Complaint, the CDT funds remain pledged to DMAL.

-13-

of DMAL, which was to develop, construct and manage the Miami Arena;

B. On the same day the Lease and MAC were executed, Decoma Venture, entered into an Arena Management Agreement with Facility Management and Marketing ("FM&M") d/b/a Leisure Management International ("LMI") whereby LMI would serve as an independent contractor and perform certain of Decoma Venture's obligations;

C. On or about June 18, 1987, FM&M, doing business as LMI, assigned to Leisure Management Miami, Inc. ("LMM"), its rights, title and interest under the October 10, 1986 Arena Management Agreement between FM&M and Decoma Venture in a document titled Assignment and Assumption of Arena Management Agreement;

D. Upon information and belief, LMM and LMI shared substantially common ownership, officers and directors;

E. On or about July 14, 1995, LMM withdrew from active corporate activity in the State of Florida;

F. In 1994, Huizenga through Huizenga Holdings, Inc. ("HHI") acquired at least fifty percent (50%) ownership in LMI; and

G. Upon information and belief, the Miami Arena is presently operated and managed by Leisure Management International ("LMI").[3/]

33. In 1988, a new professional basketball franchise, the Miami Heat, came to Miami and began playing at the Miami Arena. The Miami Heat, Ltd. ("Miami Heat"), entered into a License Agreement on March 2, 1988 with LMM, at the time not controlled by Huizenga, which granted the Miami Heat a license expiring in 1998.

---

[3/] It is unclear to MSEA when some of the above-noted changes took place because DMAL did not, as required by the MAC, submit such changes for approval to MSEA.

-14-

## HUIZENGA'S PREDATORY, MONOPOLISTIC AND ANTI-COMPETITIVE CONDUCT

34.   Between the years 1990 and 1994, Huizenga monopolized or attempted to monopolize the professional sports market in South Florida, acquiring three of the four major sports franchises in South Florida, as follows:

A.   In March of 1990, Huizenga purchased fifteen percent (15%) of the Miami Dolphins ("Dolphins") from the Robbie family.   This was the first of Huizenga's South Florida professional sports acquisitions;

B.   In July of 1991, Major League Baseball awarded Huizenga a professional baseball franchise which came to be known as the Florida Marlins ("Marlins");

C.   In November of 1992, the National Hockey League ("NHL"), awarded Huizenga a professional hockey franchise which came to be known as the Florida Panthers ("Panthers"); and

D.   In June of 1994, after convincing the National Football League ("NFL") to grant him a temporary exemption to the long-standing no cross-ownership NFL rule, Huizenga purchased the remaining 85% of the Miami Dolphins, thereby completing his purchase of the Dolphins and becoming the first and only individual in the United States to control three major professional sports franchises -- all located in South Florida.

35. Upon information and belief, Huizenga, either individually, through his entities or through parties he controls, has unsuccessfully attempted to acquire ownership of the only remaining non-Huizenga professional sports franchise in South Florida -- the Miami Heat.  Upon information and belief, Huizenga still seeks to either drive the Miami Heat out of Miami, thereby clearing the path for Huizenga to acquire a new NBA franchise, or

-15-

FITZGERALD & PORTUONDO, P. A.
Grand Bay Plaza / Suite M-103, 2665 S. Bayshore Drive, Coconut Grove, Fl 33133  Telephone (305) 854-6666 · Fax (305) 856-7634

force the sale of the Miami Heat to Huizenga or a Huizenga-controlled entity.

36. From 1990 through the present, Huizenga and the Huizenga entities, with the knowing assistance of Rochon, Blaisdell and Korge, have monopolized and attempted to monopolize the sports and entertainment facility market in South Florida, by acts including, but not limited to, the following:

A. In 1990, Huizenga and the Huizenga entities purchased fifty-percent of Joe Robbie Stadium, the first of several acquisitions of a South Florida sports and entertainment facility;

B. In 1994, Huizenga and the Huizenga entities completed their acquisition of Joe Robbie Stadium by purchasing the remaining fifty percent (50%) of the stadium;

C. Upon information and belief, Huizenga and the Huizenga entities control the Homestead MotorSports Complex in South Dade;

D. In July of 1994, Huizenga and the Huizenga entities, through HHI and with the knowing assistance of Rochon, Blaisdell and Korge, acquired a controlling interest in the Miami Arena by purchasing at least half of LMI's interest in the Miami Arena; and

E. In 1996, Huizenga and the Huizenga entities, with the knowing assistance of Rochon and Blaisdell, successfully negotiated with Broward County for the construction of a new Broward Civic Center ("Broward Arena") for Huizenga's Panthers. The development, construction, and operation of the Broward Arena were awarded to Huizenga entities, namely Arena Operating, Ltd., Arena Operating, Inc., Arena Development, Ltd., and Arena Development, Inc.

## HUIZENGA OBTAINS CONTROL OF THE MIAMI ARENA

37. In early 1993, Huizenga, as owner of the Panthers, approached LMM, at the time a non-Huizenga entity, to negotiate a

-16-

FITZGERALD & PORTUONDO, P. A.

Grand Bay Plaza / Suite M-103, 2665 S. Bayshore Drive, Coconut Grove, Fl 33133 Telephone (305) 854-6666 · Fax (305) 856-7634

short-term lease for Huizenga's newly-acquired professional hockey franchise. Huizenga, who was the Chairman and CEO of Blockbuster Entertainment, was in the process of building Blockbuster Park, a 2,500 acre multi-jurisdictional tourism, sports and entertainment district on the Dade-Broward county line with the traditional powers of an independent government, which would eventually house Huizenga's Marlins and Panthers.

38. Although LMM, as an independent property manager interested in maximizing profits for the Miami Arena, was hesitant about contracting with a tenant which would ultimately build one, perhaps two, competing sports facilities, it entered into a License Agreement with the Panthers on or about April 2, 1993. The license entitled the Panthers to play their NHL games at the Miami Arena for two (2) NHL seasons, with four (4) one-year options for renewal.[4]

39. On or about July 6, 1994, Huizenga and the Huizenga entities, through HHI, Huizenga's personal investment company, and with the knowing assistance of Rochon, Blaisdell and Korge, obtained control over the Miami Arena by acquiring at least half of the ownership interest in LMI, which operates and manages the Miami Arena. While purportedly acting as counsel for MSEA, Korge's actions were unauthorized by MSEA and outside the scope of his authority. Furthermore, Korge failed to disclose to MSEA that he

---

[4]    On or about June 21, 1993, LMM and the Panthers entered into a First Amendment to the License Agreement.

FITZGERALD & PORTUONDO, P. A.

Grand Bay Plaza / Suite M-103, 2665 S. Bayshore Drive, Coconut Grove, Fl 33133 Telephone (305) 854-6666 · Fax (305) 856-7634

was acting as a paid lobbyist for Huizenga and the Huizenga entities and failed to disclose that he had joined Huizenga and the Huizenga entities' anti-competitive and monopolistic conspiracy to restrain trade.

40. Upon information and belief, on or about July 6, 1994, Huizenga and the Huizenga entities, through HHI, Huizenga's personal investment company, and with the knowing assistance of Rochon, Blaisdell and Korge, also acquired a controlling interest in BIL and Linbeck, the two partners in Decoma Venture which were responsible for the development and construction of the Miami Arena.

41. Until the HHI acquisition, DMAL, through related entities and assignees, operated the Miami Arena as an independent contractor. After HHI's acquisition of LMI, however, DMAL joined Huizenga, the Huizenga entities, Rochon and Blaisdell's anti-competitive and monopolistic conspiracy and DMAL ceased to be concerned with maximizing profits for MSEA. Through a maze of overlapping owners, directors, officers, shareholders and others with beneficial interest and managerial control, DMAL was able to implement the anti-competitive and monopolistic goals of Huizenga, the Huizenga entities, Rochon and Blaisdell, contrary to the Miami Arena and MSEA's financial well-being.

42. Evidence of Huizenga, the Huizenga entities, Rochon and Blaisdell's blatant disregard for MSEA's financial well-being and active participation in bringing about MSEA's destruction can be

-18-

FITZGERALD & PORTUONDO, P. A.

Grand Bay Plaza / Suite M-103, 2665 S. Bayshore Drive, Coconut Grove, Fl 33133  Telephone (305) 854-6666 · Fax (305) 856-7634

found in the Second Amendment to the Panthers' License Agreement between LMI/HHI, Ltd. d/b/a/ the omnipresent Leisure Management International ("LMI") and the Panthers, which allows Huizenga's Panthers to remain at the Miami Arena, despite the Panthers' express decision to not exercise their option for renewal, until the Broward Arena is completed <u>at no charge</u>.

**HUIZENGA OBTAINS CONTROL OVER THE BROWARD ARENA**
**AND ATTEMPTS TO FORCE THE MIAMI HEAT OUT OF THE MIAMI ARENA**

43. Huizenga, the Huizenga entities, Rochon and Blaisdell's anti-competitive and monopolistic goal with respect to the South Florida sports and entertainment facility market is tri-fold. Huizenga and the Huizenga entities, with the assistance of Rochon and Blaisdell, seek to 1) develop, construct and operate a Broward Arena which will ultimately eliminate the Miami Arena as a competitor by virtue of Huizenga and the Huizenga entities' control over the Miami Arena, 2) prevent MSEA and the City from building a New Arena to house the Miami Heat and 3) as a result, acquire a complete monopoly over the sports and entertainment facility market in South Florida.

44. By letter dated July 31, 1995, Huizenga's Panthers expressly rejected exercise of their option to stay in the Miami Arena during the 1996-97 NHL season, a right granted by the License Agreement of April 2, 1993.

45. As part of his predatory, anti-competitive and monopolistic course of action, Huizenga then announced that he

-19-

FITZGERALD & PORTUONDO, P. A.
Grand Bay Plaza / Suite M-103, 2665 S. Bayshore Drive, Coconut Grove, Fl 33133 Telephone (305) 854-6666 · Fax (305) 856-7634

would take his Panthers to Broward County and build a competing arena at an undetermined location within that county.

46. Huizenga, through LMI, which currently manages and operates the Miami Arena, Arena Operating, Ltd., Arena Operating, Inc., Arena Development, Ltd., Arena Development, Inc., all of which are Huizenga entities, and with the assistance of Rochon and Blaisdell, openly and actively participated in, lobbied for and successfully negotiated the creation of the Broward Arena.

47. The proposed developer for the Broward Arena, Arena Development, Ltd., and proposed operator, Arena Operating, Ltd., are Huizenga entities and related to DMAL. Moreover, the proposed management firm for the Broward Arena is LMI, the current operator and manager of the Miami Arena.

48. As part of their predatory, monopolistic and anti-competitive conduct, Huizenga, the Huizenga entities, Rochon and Blaisdell, attempted to force the Miami Heat out of the Miami Arena, thereby attempting to eliminate MSEA as a competitor.

49. In an unsuccessful attempt to force a second tenant into the Broward Arena, Huizenga and the Huizenga entities, through LMI and with the assistance of Rochon and Blaisdell, attempted to charge the Miami Heat outrageous and extortionate rent should the Miami Heat continue to play in the Miami Arena. Upon information and belief, under the Miami Heat's existing License with LMM, the Miami Heat is charged approximately $600,000 per year to play in the Miami Arena; LMI demanded the exorbitant sum of approximately

-20-

FITZGERALD & PORTUONDO, P. A.

Grand Bay Plaza / Suite M-103, 2665 S. Bayshore Drive, Coconut Grove, Fl 33133 Telephone (305) 854-6666 · Fax (305) 856-7634

$3 million from the Miami Heat for each post-1998 NBA season at the Miami Arena.

50.   During these negotiations with the Miami Heat, LMI, which was supposed to act on behalf of and in the best interest of the Miami Arena and MSEA, instead attempted to facilitate and encourage the departure of a major tenant from the Miami Arena.

51.   A similar attempt to drive the Heat to Broward took place in late 1995 when Huizenga publicly misrepresented that he would be willing to sell the Florida Panthers.

52.   During the course of prior negotiations, the Miami Heat indicated that the team would only agree to move to Broward if it were assured that Huizenga would not, either directly or through his entities, control both the Panthers and the new Broward Arena. Therefore, in an effort to lure the Miami Heat to Broward, Huizenga publicly misrepresented that his Panthers were for sale.

53.   Upon information and belief, Huizenga received several substantial offers from able and willing buyers for the Panthers -- all of which Huizenga refused.

### HUIZENGA, THROUGH DMAL, FILES SHAM LITIGATION IN STATE COURT

54.   On or about, June 17, 1996, DMAL filed an action in the Circuit Court in and for Dade County, Florida, against the City and MSEA.   That case is styled Decoma Miami Associates, Ltd., et al. v. City of Miami and Miami Sports and Exhibition Authority, Case No. 96-12055-CA-02.

-21-

55. Although DMAL contends in its state court pleading that the litigation is required to determine the parties' rights under the patently anti-competitive provisions in the Lease and MAC, the pending state court litigation is simply another example of Huizenga, the Huizenga entities, Rochon and Blaisdell's pattern of predatory, anti-competitive and monopolistic conduct.

56. The sham state court complaint, whose veracity is certified by Blaisdell, is an anti-competitive, monopolistic and predatory effort to delay MSEA and the City's ability to construct a competing New Arena and to prevent MSEA from using CDT funds for competitive purposes. It is a transparent attempt to achieve Huizenga and the Huizenga entities' monopolistic goals.

## HUIZENGA ATTEMPTS TO DESTROY OTHER SPORTS FACILITIES IN MIAMI

57. In addition to taking actual control of the Miami Arena, Huizenga and the Huizenga entities, with the assistance of Rochon, Blaisdell and Korge, took constructive control of other Miami facilities, including Bayfront Amphitheater, by virtue of the veto power granted in § 11.1 of the Lease, which allows the Operator of the Miami Arena to veto proposed events which would be presented to a paying audience in excess of 4,000 people at other Miami facilities.

58. Similarly, because the CDT funds originally pledged to DMAL are now controlled by Huizenga and the Huizenga entities, repairs to facilities including the Orange Bowl, the Miami Marine

FITZGERALD & PORTUONDO, P. A.

Grand Bay Plaza / Suite M-103, 2665 S. Bayshore Drive, Coconut Grove, Fl 33133   Telephone (305) 854-6666 · Fax (305) 856-7634

Stadium and Bobby Maduro Stadium cannot be accomplished without the prior consent of Huizenga and the Huizenga entities.  At present, the CDT funds cannot be released because they are the subject of the sham litigation pending in state court.

59.  For example, on or about March 7, 1996, MSEA pledged $1.7 million to the NFL to assist in a program to rehabilitate inner-city parks.  These promised funds cannot be released because they are the subject of the sham litigation pending in state court.

60.  Similarly, on or about May 7, 1996, MSEA pledged CDT funds to the United States Olympic Committee for repair of the Orange Bowl Stadium in preparation for the Olympic events scheduled to take place at the Orange Bowl.  These promised funds also cannot be distributed because of the sham litigation pending in state court.

## CONCLUSION

61.  Huizenga and the Huizenga entities, with the assistance of Rochon and Blaisdell, presently control, whether directly or indirectly, all essential sports and entertainment facilities in South Florida.

62.  By virtue of the anti-competitive provisions contained in the Lease and MAC, the Miami Arena is an essential facility for the sports and entertainment facility market in Miami.

63.  The anti-competitive provisions found in § 11.1 of the Lease and § D.8.1.2. of the MAC are illegal and against public policy because anti-competitive provisions relating to essential

-23-

facilities are <u>per se</u> illegal and because they unreasonably restrain trade and commerce in the relevant geographic and product market while not serving an important public purpose.

64. Due to Huizenga, the Huizenga entities, Rochon and Blaisdell's attempts to enforce the illegal anti-competitive provisions contained in the Lease and MAC, MSEA is unable to practically or reasonably duplicate the basketball and hockey arena presently controlled by Huizenga and his entities.

65. MSEA's inability to acquire a reasonable, alternative facility to accommodate sports and entertainment events is directly related to Huizenga, the Huizenga entities, Rochon and Blaisdell's enforcement of the illegal anti-competitive provisions found in § D.8.1.2. of the MAC.

66. Without the ability to duplicate a competing sports and entertainment facility, without reasonable control over the Miami Arena and without a reasonable, alternative facility, MSEA is being held hostage by Huizenga, the Huizenga entities, Rochon and Blaisdell's anti-competitive and monopolistic conspiracy. MSEA cannot compete and cannot, as it was created to do, attract and retain major sports franchises and entertainment events for the citizens of Miami.

67. Use of sports and entertainment facilities in the South Florida area has been unreasonably withheld without legitimate or technical justification. In fact, use is being denied for anti-competitive and monopolistic reasons.

-24-

68. Through the economic leverage provided by their control over the South Florida sports and entertainment facility market, Huizenga and the Huizenga entities, with the assistance of Rochon and Blaisdell, have eliminated and precluded competition in the sports and entertainment market to the detriment of MSEA and the inhabitants of South Florida.

69. Huizenga, the Huizenga entities, Rochon and Blaisdell, through control over the Miami Arena, through attempted enforcement of the anti-competitive provisions via sham litigation, through control over the CDT funds, through development and operation of a Broward Arena and through attempts to drive out the Miami Arena's only remaining major tenant, have denied MSEA, the City and the citizens of Miami, among others, use of essential sports and entertainment facilities in Miami, have caused an unreasonable restraint on trade and commerce in the sports and entertainment facility industry in Miami and have monopolized and attempted to monopolize the South Florida sports and entertainment facility market.

70. Huizenga, the Huizenga entities, Rochon and Blaisdell's actions are preventing and will continue to prevent MSEA from participating in the construction of the New Arena. If the New Arena is not built, the Miami Heat will leave Miami. This will inevitably result in antitrust injury to MSEA.

71. MSEA has been and will continue to be financially injured, and ultimately destroyed, by Huizenga, the Huizenga

-25-

FITZGERALD & PORTUONDO, P. A.

Grand Bay Plaza / Suite M-103, 2665 S. Bayshore Drive, Coconut Grove, Fl 33133 Telephone (305) 854-6666 · Fax (305) 856-7634

entities, Rochon and Blaisdell's anti-competitive and monopolistic conduct.

72. Upon information and belief, it is Huizenga's ultimate goal to acquire the Miami Heat and thereby complete his monopoly of South Florida professional sports teams and the South Florida sports and entertainment facility market.

73. Huizenga and the Huizenga entities, with the assistance of Rochon and Blaisdell, will accomplish these goals by constructing and operating, with the assistance of Broward County, the Broward Arena which will compete with the Miami Arena. Huizenga and the Huizenga entities, with the assistance of Rochon and Blaisdell, will, unless stopped, control both the Broward and Miami Arena. As a result, Huizenga and the Huizenga entities, with the assistance of Rochon and Blaisdell, will present all profitable games, shows and concerts at the Broward Arena, thereby allowing that arena to profit while the Miami Arena and MSEA sustain antitrust injury.

74. Huizenga, the Huizenga entities, Rochon and Blaisdell have previously demonstrated their ability and willingness to cause antitrust injury to the Miami Arena and MSEA while acting as their property manager by 1) charging extortionate rent to the Miami Heat in order to drive the team to the Broward Arena and 2) attempting to enter into a lease agreement with Huizenga's Panthers which would essentially allow the team to remain in the Arena for four years -- rent free.

-26-

75. In sum, Huizenga, the entities, Rochon and Blaisdell are illegally attempting to obtain monopoly power over all four major league sports teams and all sports and entertainment facilities in South Florida.

76. MSEA has retained the law firm of Fitzgerald & Portuondo, P.A., to prosecute this action and is obligated to pay reasonable attorney's fees and costs incurred in the prosecution of this action.

**COUNT I- CONSPIRACY IN RESTRAINT OF TRADE**

77. MSEA hereby realleges and adopts its allegations as fully set forth above in paragraphs 1 through 76.

78. Huizenga, the Huizenga entities, Rochon, Blaisdell and Korge have illegally contracted and conspired to restrain interstate commerce and trade in violation of 15 U.S.C. § 1 through conduct including, but not limited to, the following:

A. Entering into and conspiring to enforce a contract which contains a per se illegal anti-competitive provision concerning essential facilities in the South Florida sports and entertainment facility market;

B. Entering into and conspiring to enforce a contract which unreasonably restrains competition in the South Florida sports and entertainment facility market;

C. Contracting and conspiring to develop and operate a Broward Arena which will expand their monopoly over the South Florida sports and entertainment facility market;

-27-

FITZGERALD & PORTUONDO, P.A.

Grand Bay Plaza / Suite M-103, 2665 S. Bayshore Drive, Coconut Grove, Fl 33133 Telephone (305) 854-6666 · Fax (305) 856-7634

D.    Contracting and conspiring to develop and operate a competing Broward Arena while purposely operating the Miami Arena for anti-competitive purposes;

E.    Conspiring to bankrupt MSEA by taking anti-competitive actions which have caused antitrust injury to MSEA; and

F.    Conspiring to block and/or delay the construction of the New Arena by filing sham litigation in state court.

## COUNT II- MONOPOLIZATION

79.    MSEA hereby realleges and adopts its allegations as fully set forth above in paragraphs 1 through 76.

80.    Huizenga, the Huizenga entities, Rochon and Blaisdell have monopolized the South Florida sports and entertainment facility market in violation of 15 U.S.C. § 2.

81.    Huizenga, the Huizenga entities, Rochon and Blaisdell obtained their monopoly power through conduct intended to obtain such power, including:

A.    Obtaining ownership and control of the Miami Arena;

B.    Obtaining ownership and control of Joe Robbie Stadium and the Broward Arena;

C.    Attempting to prevent MSEA and the City of Miami from building a competing arena in Miami;

D.    Attempting to enforce an illegal anti-competitive provision to block the construction of the New Arena and

-28-

FITZGERALD & PORTUONDO, P. A.

Grand Bay Plaza / Suite M-103, 2665 S. Bayshore Drive, Coconut Grove, Fl 33133  Telephone (305) 854-6666 · Fax (305) 856-7634

thereby eliminate competition in the sports and entertainment facility market in South Florida;

E.   Causing antitrust injury to MSEA by operating the Miami Arena for monopolistic purposes;

F.   Attempting to force the Miami Arena's only remaining tenant, the Miami Heat, to leave the Miami Arena for the Broward Arena;

G.   Through control of the CDT funds, blocking repairs to other sports and entertainment facilities in Miami; and

H.   Filing sham litigation in state court to prevent MSEA and the City from constructing the competing New Arena.

## COUNT III- ATTEMPT TO MONOPOLIZE

82.   MSEA hereby realleges and adopts the allegations contained in paragraphs 1 through 76.

83.   Huizenga, the Huizenga entities, Rochon and Blaisdell have attempted to monopolize the South Florida sports and entertainment facility market in violation of 15 U.S.C. § 2.

84.   Huizenga, the Huizenga entities, Rochon and Blaisdell have attempted to obtain monopoly power through conduct intended to obtain such power, including:

A.   Obtaining ownership and control of the Miami Arena;

B.   Obtaining ownership and control of Joe Robbie Stadium and the Broward Arena;

C.   Attempting to prevent MSEA and the City of Miami from building a competing arena in Miami;

-29-

D.   Attempting to enforce an illegal anti-competitive provision to block the construction of the New Arena and thereby eliminate competition in the sports and entertainment facility market in South Florida;

E.   Causing antitrust injury to MSEA by operating the Miami Arena for monopolistic purposes;

F.   Attempting to force the Miami Arena's only remaining tenant, the Miami Heat, to leave the Miami Arena for the Broward Arena;

G.   Through control of the CDT funds, blocking repairs to other sports and entertainment facilities in Miami; and

H.   Filing sham litigation in state court to prevent MSEA and the City from constructing the competing New Arena.

## COUNT IV- FLORIDA MONOPOLIZATION

85. MSEA hereby realleges and adopts its allegations as fully set forth above in paragraphs 1 through 76.

86. Huizenga, the Huizenga entities, Rochon and Blaisdell have monopolized the South Florida sports and entertainment facility market in violation of § 542.19, Fla. Stat.

87. Huizenga, the Huizenga entities, Rochon and Blaisdell obtained their monopoly power through conduct intended to obtain such power, including:

A.   Obtaining ownership and control of the Miami Arena;

B.   Obtaining ownership and control of Joe Robbie Stadium and the Broward Arena;

-30-

C.     Attempting to prevent MSEA and the City of Miami from building a competing arena in Miami;

D.     Attempting to enforce an illegal anti-competitive provision to block the construction of the New Arena and thereby eliminate competition in the sports and entertainment facility market in South Florida;

E.     Causing antitrust injury to MSEA by operating the Miami Arena for monopolistic purposes;

F.     Attempting to force the Miami Arena's only remaining tenant, the Miami Heat, to leave the Miami Arena for the Broward Arena;

G.     Through control of the CDT funds, blocking repairs to other sports and entertainment facilities in Miami; and

H.     Filing sham litigation in state court to prevent MSEA and the City from constructing the competing New Arena.

## COUNT V- FLORIDA ATTEMPT TO MONOPOLIZE

88.    MSEA hereby realleges and adopts the allegations contained in paragraphs 1 through 76.

89.    Huizenga, the Huizenga entities, Rochon and Blaisdell have attempted to monopolize the South Florida sports and entertainment facility market in violation of § 542.19, Fla. Stat.

90.    Huizenga, the Huizenga entities, Rochon and Blaisdell have attempted to obtain monopoly power through conduct intended to obtain such power, including:

A.     Obtaining ownership and control of the Miami Arena;

-31-

B.    Obtaining ownership and control of Joe Robbie Stadium and the Broward Arena;

C.    Attempting to prevent MSEA and the City of Miami from building a competing arena in Miami;

D.    Attempting to enforce an illegal anti-competitive provision to block the construction of the New Arena and thereby eliminate competition in the sports and entertainment facility market in South Florida;

E.    Causing antitrust injury to MSEA by operating the Miami Arena for monopolistic purposes;

F.    Attempting to force the Miami Arena's only remaining tenant, the Miami Heat, to leave the Miami Arena for the Broward Arena;

G.    Through control of the CDT funds, blocking repairs to other sports and entertainment facilities in Miami; and

H.    Filing sham litigation in state court to prevent MSEA and the City from constructing the competing New Arena.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Miami Sports and Exhibition Authority, hereby requests that this Court:

1.    Enter an Order permanently enjoining Defendants from enforcing, attempting to enforce, or threatening to enforce the anti-competitive provisions of the MAC and the Lease;

2.    Enter an Order declaring the anti-competitive provisions of the MAC and the Lease null and void;

-32-

3.   Enter an Order declaring any acts taken by Defendants since July of 1994 pursuant to the anti-competitive provisions null and void;

4.   Enter an Order permanently enjoining Defendants from interfering in any manner with the New Arena;

5.   Enter an Order invalidating all anti-competitive uses of the pledge of the CDT funds to DMAL;

6.   Enter an Order divesting Defendants, their agents or any entity under their control of any control over the Miami Arena;

7.   Enter an Order divesting Defendants, their agents or any entity under their control of any control over the Broward Arena;

8.   Enter an Order permanently enjoining Defendants from conducting the anti-competitive, predatory and monopolistic acts complained of herein; and

9.   Awarding Plaintiff its damages, trebled pursuant to 15 U.S.C. § 15 and § 542.22, Fla. Stat., and its reasonable attorney's fees, costs and interest, and such other relief as this Court deems just and proper.

-33-

FITZGERALD & PORTUONDO, P.A.

Grand Bay Plaza / Suite M-103, 2665 S. Bayshore Drive, Coconut Grove, Fl 33133 Telephone (305) 854-6666 · Fax (305) 856-7634

## DEMAND FOR JURY TRIAL

Plaintiff, Miami Sports and Exhibition Authority, hereby demands trial by jury of all issues so triable.

DATED, this 23Rd day of July, 1996.

> FITZGERALD & PORTUONDO, P.A
> Attorneys for Defendant Miami
> Sports and Exhibition Authority
> Grand Bay Plaza
> 2665 South Bayshore Drive
> Suite M-103
> Coconut Grove, Florida 33133
>
> By: _____
> Joseph J. Portuondo, Esq.
> Florida Bar No. 310034

-34-

# CIVIL COVER SHEET

**96-1996**

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I (a) PLAINTIFFS**
MIAMI SPORTS AND EXHIBITION AUTHORITY

**DEFENDANTS** HUIZENGA, H. WAYNE ; DECOMA MIAMI ASSOCIATES, LTD.; DECOMA, LTD.; DECOMA VENTURE; BTL DEVELOPMENT, INC.; LINBECK MIAMI CORPORATION; HSA MANAGEMENT, INC.; HUIZENGA HOLDINGS, INC.; LMI/HHI LTD., et al.

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** Dade
(EXCEPT IN U.S. PLAINTIFF CASES)

**COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

A. DADE 96CU1996-DLG/BLG

CIV - GRAHAM

MAGISTRATE JUDGE GARBER

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**
Fitzgerald & Portuondo, P. A.
2665 South Bayshore Drive, M-103
Miami, Florida 33133 (305) 854-6666

**ATTORNEYS (IF KNOWN)**

**(d) CIRCLE COUNTY WHERE ACTION AROSE:**
DADE, MONROE, BROWARD, PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS

**II. BASIS OF JURISDICTION** (PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒1 | ☐1 | Incorporated or Principal Place of Business In This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business In Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

**IV. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

15 U.S.C. §§1, et seq. Restraint of Trade and Monopolization

IVa. 15 days estimated (for both sides) to try entire case.

**V. NATURE OF SUIT** (PLACE AN x IN ONE BOX ONLY)

**A CONTRACT**
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
B ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
B ☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability

**A REAL PROPERTY**
B ☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**A TORTS**
**PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury

**PERSONAL INJURY**
☐ 362 Personal Injury— Med Malpractice
☐ 365 Personal Injury— Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
☐ 370 Other Fraud
B ☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**A CIVIL RIGHTS**
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 444 Welfare
☐ 440 Other Civil Rights

**B PRISONER PETITIONS**
☐ 510 Motions to Vacate Sentence
Habeas Corpus:
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
*A or B.

**B FORFEITURE/PENALTY**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**A LABOR**
☐ 710 Fair Labor Standards Act
B ☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
B ☐ 791 Empl. Ret. Inc. Security Act

**A BANKRUPTCY**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**A PROPERTY RIGHTS**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**B SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**A FEDERAL TAX SUITS**
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS—Third Party 26 USC 7609

**A OTHER STATUTES**
☐ 400 State Reapportionment
☒ 410 Antitrust
☐ 430 Banks and Banking
B ☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions *A or B

**VI. ORIGIN** (PLACE AN x IN ONE BOX ONLY)
☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Refiled
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:**
CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23
**DEMAND $** over $50,000
Check YES only if demanded in complaint:
JURY DEMAND: ☒ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY** (See instructions)
JUDGE _____ DOCKET NUMBER _____

DATE July 23, 96
SIGNATURE OF ATTORNEY OF RECORD

UNITED STATES DISTRICT COURT
S/F I-2
REV. 6/90

FOR OFFICE USE ONLY: Receipt No. 465354 Amount 120.00
Date Paid: 07/23/96