UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 96-1996-CIV-GRAHAM
MAGISTRATE JUDGE BARRY L. GARBER

MIAMI EXHIBITION AND SPORTS
AUTHORITY, an independent agency
of the City of Miami, Florida,

     Plaintiff,

v.

H. WAYNE HUIZENGA, DECOMA MIAMI
ASSOCIATES, LTD., et al.,

     Defendants.

_____/



## <u>REPORT AND RECOMMENDATION</u>

THIS CAUSE is before the Court pursuant to an Order of Reference entered by United States District Judge Donald L. Graham.  The following Report and Recommendation is submitted in reference to Defendant Decoma Miami Associates, Ltd.'s Verified Motion to Recover Attorney's Fees and Costs ("Motion").  A hearing on this matter was held on October 29, 1997 and was limited to the sole issue of entitlement with discovery postponed until after entitlement has been determined.

### <u>BACKGROUND</u>

This action arose out of a dispute between Miami Exhibition and Sports Authority ("MESA") and H. Wayne Huizenga ("Huizenga") and Decoma Miami Associates, Ltd. ("DMAL").  On June 17, 1996, DMAL filed an action against MESA in Dade County Circuit Court seeking a declaration

that certain non-compete provisions in contracts between DMAL and MESA, including the Miami Arena Contract, were valid and enforceable and precluded MESA from developing a new arena.

Thereafter, on June 23, 1996, MESA filed this action in federal court against Huizenga and DMAL alleging conspiracy, monopolization and attempted monopolization under federal and state law. MESA contended that violations of antitrust laws were evidenced by DMAL's state lawsuit against MESA, Huizenga's development of the Broward arena, Huizenga's substantial control of the Miami Arena through its operator DMAL and Huizenga's control of three professional sports teams. MESA sought to enjoin DMAL from attempting to enforce the non-compete contractual provisions and to have the provisions declared "null and void" under antitrust laws.   On August 18, 1997, MESA filed a Suggestion of Mootness Attributable to Events Arising Since this Action was Commenced. This "suggestion" urged this Court to unilaterally declare this action moot and dismiss the case. On August 6, 1997, the City of Miami and Mayors of Metropolitan Dade County entered into an agreement to acquire the property for the new arena. MESA was not a party to this agreement and had no financial or contractual involvement in the new arena. Furthermore, MESA did not contemplate any future involvement in the new arena project. Thus, MESA claimed that the action against Huizenga and DMAL was moot because the non-compete provisions in the Miami Arena Contract were irrelevant to the new arena since MESA was not participating in the development of the new arena. This Court refused to dismiss the case based on MESA's Suggestion and MESA subsequently voluntarily dismissed this action pursuant to Fed.R.Civ.P. 41(a)(1).

## DISCUSSION

DMAL is seeking attorney's fees totaling $53,441.25 and costs totaling $2,281.70. DMAL argues that it is contractually entitled to attorney's fees and costs pursuant to a provision in the

2

Miami Arena Contract entered into by MESA and DMAL. In the alternative, DMAL argues that this Court should use its inherent authority to award DMAL's costs and attorney's fees because MESA acted in bad faith in bringing and maintaining this action. Before addressing DMAL's theories on entitlement, it is necessary to determine whether this Court has jurisdiction to entertain this Motion.

## A.    JURISDICTION

MESA avers in its Memorandum in Opposition to the Motion that this Court lacks the jurisdiction to entertain this Motion. MESA argues that because voluntary dismissal under Fed.R.Civ.P. 41(a)(1) is immediately self-effecting upon filing by a plaintiff, a court's jurisdiction to assess fees is accordingly terminated. In support of this proposition, MESA cites Williams v. Ezell, 531 F.2d 1261 (5th Cir. 1976). In Williams, the Fifth Circuit overturned an award of attorney's fees after the plaintiff had voluntarily dismissed the lawsuit under Rule 41(a)(1). Id. at 1263. The Fifth Circuit held that since the case was effectively terminated upon plaintiff's filing of the motion to dismiss and since defendant neither filed an answer to the complaint, nor a motion for summary judgement, the court had no power to deny plaintiff's right to dismiss or attach any condition or burden to that right. Id. Thus, the court found that any subsequent order granting attorney's fees would be a "nullity." Id.

Although MESA avers that Williams "controls," this Fifth Circuit case is overshadowed by the United States Supreme Court's ruling in Cooter & Gell v. Hartmarx Corp., 496 U.S. 384 (1990). In Cooter & Gell, the Court addressed whether filing a notice of voluntary dismissal pursuant to Rule 41(a)(1) deprived a court of jurisdiction to award attorney's fees pursuant to Fed.R.Civ.P. 11. Id. at 2454-55. Although Cooter & Gell was a Rule 11 case, the Supreme Court stated that "[i]t is well established that a federal court may consider collateral issues after an action is no longer pending."

Id. at 2455. Moreover, the Supreme Court considers "motions for costs and attorney's fees [to be] 'independent proceeding[s] supplemental to the original proceeding and not a request for modification of the original decree.'" Id. (quoting Sprague v. Ticonic National Bank, 307 U.S. 161, 170 (1939)). Finally, the Court noted that "even 'years after the entry of a judgment on the merits' a federal court could consider an award of counsel's fees." Id. (quoting White v. New Hampshire Dept. of Employment Security, 455 U.S. 445, 451 n.13 (1982)). Thus, although a voluntary dismissal under Rule 41(a)(1) might deprive a court of jurisdiction on the merits, a court may still entertain jurisdiction on a motion for attorney's fees. See Mathews v. Gaither, 902 F.2d 877, 880 (11th Cir. 1990)(court retains power to impose sanctions under Rule 11 despite Rule 41(a)(1) notice of dismissal). Considering that DMAL's Motion involves collateral issues apart from the merits of the case, this Court has jurisdiction to entertain DMAL's Motion.

**B.     ATTORNEY'S FEES PROVISION IN MIAMI ARENA CONTRACT**

Federal courts apply state law when ruling on the interpretation of contractual attorney fee provisions. In re Sure-Snap Corp. v. Shure, 983 F.2d 1015, 1017 (11th Cir. 1993). The law is well-settled in Florida that matters bearing on the validity and interpretation of a contract are governed by the law of the state where the contract was made. Id. Since the MAC was entered into in the State of Florida, Florida law governs the construction of the attorney's fee provision.

Under Florida law, the question of entitlement to attorney's fees is controlled by the "plain meaning of the language of the contract." Baker Protective Services. v. FP, Inc., 659 So.2d 1120, 1122 (Fla. 3d DCA 1995). Furthermore, contractual attorney's fees provisions should be strictly construed. Id. at 1123. Paragraph D.10.14 of the MAC contains the Attorneys' Fee provision ("Provision") which provides as follows:

Attorneys' Fee. In the event either party defaults in the performance of any of the terms, conditions or agreements contained in this Contract and the other party places the enforcement of this Contract, or any part thereof, or the collection of any sums due, or to become due, hereunder or delivery or recovery of the Premises, in the hands of an attorney who files suit upon the same (either by direct action or counterclaim) and should such non-defaulting party prevail in such suit, the defaulting party shall pay the other party's reasonable attorney's fee. Any such attorney's fees shall not be considered Operating Expenses.

Appendix in Support of Memorandum of Law in Opposition to Decoma's Motion for Attorney's Fees, Exhibit D.

Under the terms of the Provision, a party can only recover a "reasonable attorney's fee." Therefore, DMAL cannot recover costs under this provision because costs are not reasonable attorney's fees. Also, under the Provision, only a "non-defaulting party" that "prevails" in a suit may recover. Moreover, that "non-defaulting" party may only recover from a "defaulting party."

## 1.   PREVAILING PARTY

Under Florida law, when a plaintiff takes a voluntary dismissal, the defendant is deemed a "prevailing party." <u>Casarella v. Zaremba Coconut Creek Parkway Corp.</u>, 595 So.2d 162, 163 (Fla. 4th DCA 1992). In the case at bar, the suit was voluntarily dismissed before trial by Plaintiff pursuant to Fed.R.Civ.P. 41(a)(1). Since the suit was dismissed before trial, there was no adjudication of the merits of the case. Thus, DMAL has not been adjudged to be a defaulting party in this action. Accordingly, under these circumstances, this Court finds that DMAL is both a "non-defaulting" and "prevailing" party within the plain language of the Provision. However, this does not end the analysis because such a "non-defaulting" and "prevailing" party may only recover from a "defaulting party." Thus, this Court must determine if MESA is a "defaulting party."

## 2.   DEFAULTING PARTY

The right to attorney's fees under any contractual provision is limited by the terms of such

provision. Furthermore, such attorney's fees are not necessarily recoverable as to any and all litigation relating to a contract. See, Bay Lincoln-Mercury-Dodge, Inc., v. Transouth Mortgage Corp. of Florida, 531 So.2d 1027, 1028 (Fla. 1st DCA 1988)(provision for attorney's fees only in the event buyer defaults); Key Lobster, Inc., v. Ocean Divers, Inc., 468 So.2d 360, 362 (Fla. 3d DCA 1985)(entitling prevailing party to attorney's fees in "any litigation" arising out of the contract); Baker Protective Services. v. FP, Inc., 659 So.2d 1120, 1122 (Fla. 3d DCA 1995)(entitlement only where engaging the services of an attorney in the collection of monies); Chesterfield Company v. Ritzenheim, 350 So.2d 15 (Fla. 4th DCA 1977)(attorney's fees may be recovered only if lessee breaches any of the provisions of the lease).

DMAL contends that because this lawsuit is based on alleged defaults under the MAC, the Provision is effective against MESA. However, although this lawsuit may have been based on alleged defaults by Defendant, the action was nevertheless dismissed before trial. Thus, neither MESA or DMAL was adjudged to be a "defaulting party." Considering that attorney's fees provisions are to be strictly construed, that MESA and DMAL both are sophisticated parties and that the language of the Provision clearly and plainly states that one party may only recover against a "defaulting party," this Court finds that MESA is not a "non-defaulting party" under the Provision. Thus, DMAL may not recover attorney's fees from MESA based on this theory of liability.

## C.     COURT'S INHERENT AUTHORITY TO AWARD ATTORNEY'S FEES

Under the "American Rule," the prevailing litigant is ordinarily not entitled to collect a reasonable attorney's fee from the loser. Alyeska Pipeline Services. Comp. v. Wilderness Society, 421 U.S. 240, 247 (1975). Although Congress has made specific provisions for attorney's fees under certain federal statutes, it has not changed the general rule that allowances for attorney's fees are

limited to the sums specified by statute or enforceable contract. Id. at 256-57. However, the Supreme Court has fashioned a few exceptions to the American Rule.

First, a court may assess attorney's fees for the willful disobedience of a court order as part of a fine to be levied against the defendant. Id. at 258. Second, attorney's fees may be levied when the losing party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Id. at 258-59. These exceptions are assertions of the court's inherent power and are permissible unless forbidden by Congress. Id.

Although awards under exceptions to the American Rule have a punitive and deterrent flavor, these awards serve a compensatory purpose and are limited to "those expenses necessary to counter the losing party's bad faith." Sierra Club v. U.S. Army Corps of Engineers, 776 F.2d 383, 389 (2d Cir. 1985). Thus, in addition to attorney's fees, reasonable costs may be awarded under the inherent authority doctrine.

The bad faith exception to the award of attorney's fees is not limited to cases where the action is filed in bad faith. Bad faith may also be found in the conduct of the litigation. Roadway Express, Inc., v. Piper, 447 U.S. 752, 764-65 (1980); Ames, Inc., v. Gulf Abstract & Title, Inc., 758 U.S. 1486, 1507 (11th Cir. 1985). An award of attorney's fees under the bad faith exception "is punitive, and the penalty can be imposed 'only in exceptional cases and for dominating reasons of justice.'" United States v. Standard Oil Co., 603 F.2d 100, 103 (9th Cir. 1979)(quoting 6 J. Moore, Federal Practice P 54.77(2) pp. 1709-10 (2d ed. 1972)). Moreover, "[i]nvocation of the bad faith exception . . . requires more than a showing of a weak or legally inadequate case." American Industries, Inc., v. Wometco de Puerto Rico, Inc., 556 F.2d 625, 628 (1st Cir. 1979). The exception is "not invoked by findings of negligence, frivolity, or improvidence," Cornwall v. Robinson, 654 F.2d 685 (10th

Cir. 1981), and must be exercised with "restraint and discretion." <u>Roadway</u>, 447 U.S. at 764.

In <u>United States v. Bachner</u>, 877 F.Supp. 625 (S.D. Fla. 1995), the court held that bad faith can be established:

> (1) on the losing party's conduct of the litigation and the merit of its claims or litigation position when the court finds that the losing party's claims were entirely frivolous, unreasonable or groundless and made for reasons of harassment or delay; or

> (2) on the conduct giving rise to the legal controversy when a party confronted with a clear legal duty is so recalcitrant in performing that duty that the injured party is forced to resort to litigation to vindicate his rights.

<u>Id.</u> at 628; <u>Sierra Club v. U.S. Army Corps of Engineers</u>, 776 F.2d 383, 390 (2d Cir. 1985); <u>Lear Siegler v. Lehman</u>, 842 F.2d 1102 (9th Cir. 1988); <u>New York Housing Authority v. Kemp</u>, 751 F.Supp. 1123 (S.D.N.Y. 1990). Since DMAL is not alleging that MESA acted in bad faith by failing to perform a clear legal duty under part (2) of <u>Bachner's</u> bad faith test, this Court will apply part (1). To find bad faith under part (1), this Court must find both that the claims against DMAL were "entirely frivolous, unreasonable or groundless" <u>and</u> that the claims were "made for reasons of harassment or delay."

The first step in determining bad faith is determining whether the claims against DMAL were "entirely frivolous, unreasonable or groundless." A claim is "entirely without color" when it lacks any legal or factual basis. <u>Nemeroff v. Abelson</u>, 620 F.2d 339, 348 (2d Cir. 1980). Here, the crux of DMAL's argument is that MESA acted in bad faith by continuing this lawsuit long after it had an obligation to dismiss the suit. DMAL contends that "after filing this lawsuit, MESA failed to investigate or substantiate any of its claims, and ignored virtually every one of the deadlines set by the Court's Scheduling Order." DMAL's Verified Motion to Recover Attorney's Fees and Costs at

8

9. Second, DMAL contends that MESA knew that its claims were groundless and nonetheless failed to dismiss the action.  DMAL refers to a deposition and interrogatories in support of this claim.  In the deposition, MESA negotiator, Tony Ridder, acknowledged that MESA had no involvement in negotiations for the new arena after March 1996 (this action was filed on July 23, 1996).  Id. Second, DMAL points to interrogatories answered no later than May 2, 1997, by MESA which stated that "MESA's lack of sponsorship of the proposed new arena plan that is operative is a matter of obvious and common knowledge. . . ."  Id. (quoting MESA's Response to Interrogatories ¶ 11). Although DMAL cites two sources of testimony which indicate that MESA's negotiations for developing the new arena were stalled or tenuous, MESA's position could have changed because no deal was finalized at either time.  MESA's claims against DMAL may have been weak and ultimately unsuccessful, but there was some legal and factual basis for these claims under antitrust laws.  The alleged behavior of Huizenga and DMAL could have impacted MESA's ability to develop a new arena and so long as a possibility that MESA might be involved in the development of the new arena was not foreclosed, this remained a viable lawsuit.  Thus, this Court finds that the lawsuit was colorable at its inception on June 23, 1996.

Although the claims against DMAL may have been colorable at their inception, courts have found that a failure to withdraw from a meritless action is bad faith.  Nemeroff v. Abelson, 704 F.2d 652, 659 (2d Cir. 1983)(attorney's fees awarded under bad faith exception where plaintiff continued a meritless suit over ten months after the time when they should have realized that they had no support for their charges); Dreiling v. Peugeot Motors of America, Inc., 768 F.2d 1159, 1163-66 (10th Cir. 1985)(bad faith found where plaintiff continued to assert his claims for over a "year and

several months" beyond what would have been reasonable to dismiss the claims). DMAL contends that when MESA swore under oath on May 2, 1996, that it was not involved with the new arena, it was under an obligation to dismiss the suit at that time. MESA contends that the lawsuit became moot when an agreement for the property for the new arena was entered into on August 5, 1997. Although MESA might have anticipated that this action would become moot based on its knowledge as of May 2, 1997, MESA was not foreclosed from participating in the development of the new arena had the negotiations with the City of Miami and Mayors of Metropolitan Dade County faltered. The test for bad faith requires the claims to be "entirely frivolous, unreasonable or groundless." Bachner, 877 F.Supp. at 628. Although MESA's claims might have been weak and eventually unsuccessful, there was some factual or legal basis for the claims. Therefore, this Court finds that the claims were not "entirely frivolous, unreasonable or groundless." Thus, part (1) of the bad faith test fails.

Moreover, even if MESA's claims were found to be "entirely frivolous, unreasonable or groundless," this Court would also have to find that the claims were made for "reasons of harassment or delay." DMAL contends that MESA's long delay in failing to stop this action was "'strategy' to burden DMAL (and the other defendants) as much as possible with needless and wasteful outlays of attorney's fees and costs, presumably to pressure DMAL to drop its lawsuit in Dade County Circuit Court or at a minimum to divert DMAL's resources from that lawsuit." DMAL's Verified Motion to Recover Attorney's Fees and Costs at 10. Even if DMAL's date of May 2, 1997, is used to determine the delay, only three months would have tolled before MESA attempted to withdraw the suit. This is substantially less than the two cases, Nemeroff and Dreiling, cited by DMAL where there were delays of over ten months. Thus, even if MESA's claims might have become groundless

on May 2, 1997, MESA dismissed the lawsuit within a reasonable time such that the prior prosecution thereof did not constitute harassment or delay. Therefore, this Court is precluded from asserting its inherent authority to award attorney's fees.

Considering that DMAL has failed to establish that MESA's claims were "entirely frivolous, unreasonable or groundless" and that the claims were "made for reasons of harassment or delay," this Court finds that the bad faith exception to the American Rule is inapplicable in this case. Thus, DMAL is not entitled to attorney's fees or costs under this Court's inherent authority.

## CONCLUSION

This Court finds that the Attorney's Fees provision in the Miami Arena Contract is not applicable because MESA is not a "defaulting party" under the terms of the provision and may not be held liable for DMAL's attorney's fees under this theory of liability. In addition, this Court finds that MESA has not prosecuted this action in bad faith. Therefore, this Court cannot use its inherent authority to award attorney's fees or costs.

## RECOMMENDATION

Based on the foregoing, this Court recommends that DMAL's Verified Motion for Costs and Attorney's Fees be DENIED.

The parties have (10) days from the date of this Report and Recommendation to file written objections, if any, with the Honorable Donald L. Graham, United States District Judge. See 28 U.S.C. § 636 (1991). Failure to file timely objections may bar parties from attacking on appeal the factual findings contained herein. LoConte v. Dugger, 847 F.2d 745, 750 (11th Cir.), cert. denied, 488 U.S. 958 (1988).

11

RESPECTFULLY SUBMITTED at the United States Courthouse, Miami, Florida this 20th

day of February 1998.

BARRY L. GARBER
UNITED STATES MAGISTRATE

Copies supplied to:
U.S. District Judge Graham
Counsel of record

12